IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darby Borough,                          :
                    Petitioner          :
                                        :
        v.                              :  No. 175 C.D. 2019
                                        :  SUBMITTED:  August 23, 2019
Workers' Compensation Appeal            :
Board (Bevenour),                       :
                    Respondent          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED:  November 26, 2019


        Darby Borough (Employer) petitions for review of the January 17, 2019 Order
of the Workers' Compensation Appeal Board (Board), which affirmed in part and
reversed in part the decision of a Workers' Compensation Judge (WCJ).  In its January
17, 2019 Order, the Board: (1) affirmed the WCJ's expansion of Jeffrey Bevenour's
(Claimant) work injury to include a partial right rotator cuff tear; and (2) reversed the
WCJ's grant of Employer's Petition to Terminate Compensation Benefits (Termination
Petition).  For the reasons that follow, we affirm the Board's Order.

## Background

        On June 3, 2014, Claimant sustained a right shoulder strain during the course
and scope of his employment as a police officer for Employer.  WCJ's Op., 6/6/16,
Finding of Fact (F.F.) No. 2.  Claimant was injured during a struggle that ensued while
he was apprehending a suspect.  *Id.* No. 5.  During the struggle, Claimant fell to the
ground and landed on his outstretched right arm.  *Id.*

Employer accepted Claimant's work injury as a right shoulder strain in a Notice of Compensation Payable (NCP). *Id.* No. 2. On March 2, 2015, Employer filed a Termination Petition, alleging that Claimant was fully recovered from his work injury as of February 10, 2015. *Id.* No. 1.

The WCJ held hearings on the Termination Petition on March 18, 2015 and March 16, 2016, after which the WCJ made the following pertinent factual findings.

Employer presented the deposition testimony of Dennis P. McHugh, D.O., a board-certified orthopedic surgeon, who examined Claimant on February 10, 2015. *Id.* No. 25. Dr. McHugh obtained from Claimant a description of his June 2014 work injury and a history of his treatment thereof. *Id.* Dr. McHugh also reviewed Claimant's medical records and diagnostic studies. *Id.*

Regarding the diagnostic studies, Dr. McHugh testified that "there was [a magnetic resonance imaging (MRI)] done on 7/21/14 of [Claimant's] right shoulder that showed small partial tendinopathy" and he agreed with that assessment. McHugh Dep., 7/23/15, at 11; WCJ's Op., 6/6/16, F.F. No. 26. Dr. McHugh also testified that an MRI of Claimant's cervical spine on August 27, 2014 showed no disc herniations in the neck and an MRI of Claimant's right brachial plexus on October 3, 2014 showed no abnormalities. WCJ's Op., 6/6/16, F.F. No. 26.

Dr. McHugh testified that Claimant had suffered a right shoulder strain, as identified in the NCP, as a result of his June 2014 work injury. *Id.* No. 33. Dr. McHugh further testified that, as of the date of his examination, Claimant had no residual issues stemming from his right shoulder strain, nor any other right shoulder pathology. *Id.*

Dr. McHugh opined, based on his review of the records available to him, that Claimant had fully recovered from the work-related right shoulder strain as of February 10, 2015 and needed no further care for that injury. McHugh Dep., 7/23/15, Ex. 2, at

2

6. Dr. McHugh also opined that, as of that date, Claimant could return to work as a patrolman for Employer without limitations. *Id.*[1]

Claimant testified that before the June 2014 work incident, he had been a police officer for Employer for eight years. WCJ's Op., 6/6/16, F.F. No. 4. His job duties included driving a patrol vehicle, responding to radio calls, arresting individuals with the use of force, chasing fleeing subjects, engaging in hand-to-hand combat, and using firearms. *Id.* Claimant also worked as an emergency medical technician (EMT) for Mercy Health System. *Id.*

Claimant last performed his pre-injury job for Employer on June 9, 2014. *Id.* Claimant has not worked as an EMT since 2014 due to the restrictions on his use of his right arm following the June 2014 work injury. *Id.*

Claimant testified that he has experienced limited range of motion of his right arm and pain, popping, and clicking sensations in his right shoulder since the June 2014 work incident. *Id.* No. 5. Claimant testified that he has constant pain in his right arm, aggravation of his pain with the use of his right arm, pain in the scapula and into his neck, a burning sensation down his right arm, and numbness and loss of strength in his right arm and his third, fourth, and fifth fingers on his right hand. *Id.* No. 9. Claimant resumed a light-duty position with Employer on October 19, 2015, wherein he performs desk work. *Id.* No. 8.[2]

---

[1] Employer "also presented the deposition [testimony] of Joseph Lubeck, D.O., who performed an [electromyography study] of Claimant [in October 2014] and found the results were normal and [there was] no evidence of cervical radiculopathy or brachial plexopathy." Bd.'s Op., 6/6/17, at 3 n.2.

[2] Claimant also presented the testimony of Corporal Joseph O'Donnell, Claimant's supervisor at the time of his work injury. Corporal O'Donnell testified that "Claimant filed a supplemental report about the work injury [indicating] Claimant's limited range of motion of the right arm and shoulder, pain and weakness in the area of the limb and joint, and clicking and popping sensations with normal range of motion" and that "Claimant does[ not] use his right arm and keeps his right arm to his side during [his] present work for [Employer]." WCJ's Op., 8/30/17, F.F. Nos. 10, 11.

3

Claimant presented the deposition testimony of his treating physician, William Murphy, D.O. Dr. Murphy is board certified in physical medicine and rehabilitative medicine and first examined Claimant on March 17, 2015. *Id.* No. 12. Dr. Murphy obtained a history of Claimant's June 2014 work injury and reviewed various medical reports and a July 2014 MRI report, as well as the deposition testimony of Dr. McHugh and Dr. Lubeck. *Id.*

Dr. Murphy testified that the July 2014 MRI report revealed a partial tear of the right rotator cuff. *Id.* No. 13. Dr. Murphy diagnosed "Claimant with cervical and right shoulder strains and sprains, right cervical nerve root irritation or radiculitis, a partial right rotator cuff tear of the shoulder, and a right brachial plexus stretch injury." *Id.* No. 16. He further opined that Claimant had not recovered from any of those injuries at the time of his examination. *Id.*

Dr. Murphy agreed with Dr. McHugh that Claimant had sustained a right shoulder strain as a result of the June 2014 work incident. *Id.* No. 16. However, Dr. Murphy disagreed with Dr. McHugh that Claimant's injury was limited to a right shoulder strain, because the July 2014 MRI revealed a partial right rotator cuff tear. *Id.* No. 17.[3] Furthermore, based on his ongoing treatment of Claimant and his review of the medical records, Dr. Murphy disagreed with Dr. McHugh's conclusion that Claimant had recovered from his work injury. *Id.*

After his initial examination of Claimant in March 2015, Dr. Murphy treated Claimant once per month. *Id.* No. 19. Dr. Murphy testified that there had not been much change in Claimant's condition since his initial evaluation and opined that

---

[3] Dr. Murphy testified that the July 2014 MRI showed "a partial thickness tear of the supraspinatus[,] which [is] part of the rotator cuff." Murphy Dep., 11/11/15, at 12. He explained that "[t]he supraspinatus is a muscle and at the end of the muscle[,] a tendon joins with several other tendons to form the rotator cuff." *Id.*

Claimant remained symptomatic from the June 2014 work injury. *Id.* Dr. Murphy testified that Claimant was unable to return to his pre-injury job, but he cleared Claimant for the performance of limited-duty, sedentary work. *Id.* Nos. 18, 19.

On June 6, 2016, the WCJ granted Employer's Termination Petition, concluding that, based on Dr. McHugh's testimony, Employer met its burden of proving that Claimant was fully recovered from his work injury as of February 10, 2015. WCJ's Op., 6/6/16, Conclusion of Law (C.L.) No. 3; *id.*, F.F. No. 16. The WCJ further found, based on Dr. Murphy's testimony, that the description of Claimant's work injury in the NCP should be expanded to include a partial tear of the right rotator cuff. WCJ's Op., 6/6/16, F.F. No. 16. Thus, the WCJ amended the NCP to include a partial right rotator cuff tear in addition to the right shoulder strain. WCJ's Order, 6/6/16. In her decision, however, the WCJ did not address whether Claimant had fully recovered from the partial right rotator cuff tear. Both Claimant and Employer appealed to the Board.

On June 6, 2017, the Board reversed and remanded the matter to the WCJ for additional findings of fact and conclusions of law. The Board found that the WCJ's initial findings and conclusions were contradictory, in part because the WCJ accepted the testimony of both Dr. McHugh and Dr. Murphy with regard to the description of Claimant's work injury. Bd.'s Op., 6/6/17, at 4-5. The Board explained:

> [T]he WCJ made completely contradictory findings and conclusions in both accepting Dr. McHugh's testimony that Claimant only had a right shoulder strain and no other shoulder pathology as credible and seemingly also accepting Dr. Murphy's testimony that Claimant's work injury did include additional shoulder pathology, specifically a partial tear of the right rotator cuff.

*Id.* at 5. Therefore, the Board remanded the matter for the WCJ to make credibility determinations regarding whether Claimant's work injury also included a partial right rotator cuff tear. *Id.* The Board further instructed that, if the WCJ finds that Claimant

5

sustained a rotator cuff tear, the WCJ must also determine whether Employer's medical evidence established Claimant's full recovery from his entire work injury, including the rotator cuff tear. *Id.*

Following remand, on August 30, 2017, the WCJ again granted Employer's Termination Petition. The WCJ found Dr. McHugh more credible than Dr. Murphy with regard to Claimant's recovery from his June 3, 2014 work injury. Specifically, the WCJ stated, "Dr. McHugh credibly testified that the Claimant only had a shoulder injury as a result of the work injury and that the Claimant did[ not] have any objective indication of any shoulder pathology during [his] evaluation of the Claimant." WCJ's Op., 8/30/17, F.F. No. 16. The WCJ further found:

> Dr. Murphy is credible with respect to a diagnosis of partial right rotator cuff tear as a result of the work injury because *Drs. Murphy and McHugh are in agreement with the existence of a right shoulder pathology on the [MRI] test of the Claimant's right shoulder on July 21, 2014, despite the lack of entry of the MRI report into evidence*, and Dr. McHugh is credible with respect to the Claimant's recovery from the full work injury by February 10, 2015 on the bases of the normal examination results on February 10, 2015, with the exception of symptom magnification, and of the lack of any shoulder pathology then.

*Id.* No. 3. The WCJ concluded:

> [S]ince Dr. McHugh credibly testified that the Claimant did[ not] have any objective indication of any shoulder pathology during [his] evaluation of the Claimant and that the Claimant's examination on February 10, 2015 was normal with the exception of symptom magnification, the Claimant made a recovery from the "partial right rotator cuff tear" and all of the work injuries by February 10, 2015.

*Id.* No. 17; *see id.* No. 34. Both Claimant and Employer appealed to the Board.

On January 17, 2019, the Board issued an Order affirming the expansion of Claimant's work injury to include a partial right rotator cuff tear, but reversing the WCJ's grant of Employer's Termination Petition. The Board concluded that "the

6

WCJ's expansion of Claimant's injury to include a partial right rotator cuff tear was supported by the substantial, competent [testimony] of Dr. Murphy[]," which the WCJ credited. Bd.'s Op, 1/17/19, at 6. However, the Board concluded that "the WCJ erred in basing her grant[] of [Employer's] Termination Petition on Dr. McHugh's testimony." *Id.* at 4. The Board reasoned as follows:

> The WCJ accepted Dr. McHugh's testimony and found that it established that Claimant was fully recovered from his entire June 3, 2014 work injury. However, an employer can only be entitled to a termination of a claimant's benefits if it proves that the claimant is fully recovered from *all aspects* of the work injury. Here, while the NCP only established the work injury consisted of a right shoulder strain, the WCJ specifically expanded the injury to include a partial right rotator cuff tear. Thus, [Employer] bore the burden of proving through its medical evidence that Claimant was fully recovered from both the shoulder strain and rotator cuff tear. *However, Dr. McHugh only testified that Claimant was fully recovered from a right shoulder strain and made no mention of a rotator cuff tear. He never even referenced Claimant had sustained a rotator cuff tear in the past or that it was ever part of the work injury diagnosis. Consequently, Dr. McHugh's testimony did not establish that Claimant was fully recovered from all aspects of the work injury and was not competent to support a termination of his benefits.*

*Id.* at 5 (second emphasis added) (internal citation omitted).[4] Employer now petitions this Court for review.[5]

## **Analysis**

[4] Two of the five Board members dissented. The Chairman of the Board stated that he dissented because "the WCJ on [r]emand adequately addressed this Board's directive and explained that she found that there was a rotator cuff tear as part of the shoulder pathology, but that Claimant fully recovered from the shoulder injury." Bd.'s Op., 1/17/19, at 7.

[5] Our scope of review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Pa. Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

Employer asserts that the Board erred in concluding that it failed to prove that Claimant had fully recovered from his work injury as of February 10, 2015.[6] "To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability ceased[] or [that] any remaining conditions are unrelated to the work injury." *Westmoreland Cty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies this burden when its medical expert "unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered[] [and] can return to work without restrictions and that there are no objective medical findings [that] either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The WCJ may terminate benefits only if the WCJ finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998).

In this case, the WCJ determined that the original NCP "was materially incorrect" because it did not include "a partial tear of the right rotator cuff" as one of Claimant's work-related injuries. WCJ's Op., 6/6/16, F.F. No. 33. As a result, the WCJ amended the NCP to include a partial right rotator cuff tear, in addition to the right shoulder strain, as Claimant's accepted work injuries. WCJ's Order, 6/6/16. Thus, Employer was required to prove that Claimant had fully recovered from *both* the right shoulder strain *and* the partial right rotator cuff tear. *See Central Park Lodge*, 718 A.2d at 370.

---

[6] In its Statement of Questions Involved on appeal, Employer does not challenge the portion of the Board's Order affirming the expansion of Claimant's work injury to include a partial right rotator cuff tear. *See* Employer's Br. at 4.

8

In a termination proceeding, the employer must "prove[] [the claimant's] full recovery with unequivocal, competent medical evidence." *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010). "[A] medical expert's opinion will not support a termination if that medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries." *Id.* Our Court has explained that "*[a]t a bare minimum, the expert must know what the accepted work-related injury was* to be competent to testify that a claimant has fully recovered from [such] injury." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1200 (Pa. Cmwlth. 2007) (emphasis added). Without recognizing the specific work-related injury, a medical expert's opinion is insufficient to support a finding that a claimant has fully recovered from such injury. *Id.*

Here, Employer's medical expert, Dr. McHugh, opined that Claimant suffered a right shoulder strain as a result of the June 2014 work incident. WCJ's Op., 6/6/16, F.F. No. 33. However, the WCJ found, based on Dr. Murphy's credible testimony, that Claimant's work injury also included a partial right rotator cuff tear. *Id.* Despite this finding, the WCJ nevertheless determined that Dr. McHugh's testimony established Claimant's full recovery from his entire work injury as of February 10, 2015. The WCJ explained her reasoning as follows:

> Dr. McHugh's testimony established that the Claimant's examination on February 10, 2015 was normal with the exception of symptom magnification, that Dr. McHugh did [not] see any indication of shoulder pathology during his examination on February 10, 2015, and that the *Claimant did [not] have residual issues with a relationship to the Claimant's right shoulder strain and specifically [did not have] any shoulder pathology at the time of Dr. McHugh's examination* of the Claimant.

9

WCJ's Op., 8/30/17, F.F. No. 34 (emphasis added). We conclude, however, that the WCJ's finding of full recovery is not supported by unequivocal, competent medical evidence.

In *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991, 996 (Pa. Cmwlth. 2005) (*en banc*), the claimant's established work injury was "chronic sciatica at the L5-S1 distribution on the right side with disc bulging at L5-S1." However, the claimant's doctor "expressly testified that [the c]laimant suffered only [a] lumbar strain and sprain as the result of [the claimant's] work injury and that [the c]laimant [had] recovered only from that lumbar strain and sprain." *Id.* On appeal, we held that the doctor's testimony did not support the [WCJ's] finding "that [the c]laimant fully recovered from [his] established work-related injury." *Id.* at 996-97; *see also Hall*, 3 A.3d at 740 ("[A] medical expert's opinion will not support a termination *if that medical expert does not acknowledge the accepted work injuries* and does not opine full recovery from those injuries.") (emphasis added).

Similarly, in *Elberson*, the claimant suffered a herniated nucleus pulposus (HNP) in her lumbar spine at L4-5 as a result of a work-related incident. 936 A.2d at 1196-97. The employer argued that the claimant had fully recovered from her back injury as of November 2003, and the employer's expert, Howard H. Steel, M.D., testified in that regard. *Id.* at 1197. On appeal, this Court reversed the grant of the employer's termination petition, concluding:

> Dr. Steel never recognized that [the c]laimant suffered from the HNP at L4-5 because he thought that the work injury was a sprain or strain of her back. *Even though he testified that there was no clinical evidence of any "abnormality" in [the c]laimant's spine, without recognizing the specific work-related injury, Dr. Steel's opinion is insufficient to support that [the claimant] had fully recovered from a specific work-related injury.*

*Id.* at 1199-1200 (emphasis added).

10

Here, Dr. McHugh determined that Claimant suffered only a "right shoulder strain" as a result of the work incident and further opined that, as of February 10, 2015, Claimant had no "residual issues" nor any other shoulder pathology stemming from the right shoulder strain. WCJ's Op., 6/6/16, F.F. No. 33; WCJ's Op., 8/30/17, F.F. Nos. 3, 16. Dr. McHugh testified as follows:

> Q: Doctor, as a result of your examination and the records you reviewed and your medical expertise, were you able to come to any opinions within a reasonable degree of medical certainty based on the above?
>
> A: Yes.
>
> Q: And what were those?
>
> A: *That at the time of his incident, . . . [Claimant] had a work-related right shoulder strain.*
>
> Q: Did you have an opinion as to whether that strain affected anything else or was in any way affecting him at the time of your evaluation?
>
> A: At the time of my evaluation, *I did not feel that he had any residual issues related to his right shoulder strain,* no.

McHugh Dep., 7/23/15, at 24-25 (emphasis added). Significantly, Dr. McHugh did not identify Claimant's partial right rotator cuff tear as a work-related injury and did not mention that injury in rendering his medical opinion regarding Claimant's recovery from the work incident. Furthermore, in his written report, Dr. McHugh stated:

> At this point in time it is my medical opinion, within a reasonable degree of medical certainty, that *[Claimant] is fully recovered from the right shoulder strain that occurred on 6/3/14.* It is my medical opinion, within a reasonable degree of medical certainty, that he needs no further care *as it pertains to that right shoulder strain* and that he could return to work as a patrolman for [Employer] without limitations.

McHugh Dep., 7/23/15, Ex. 2, at 6 (emphasis added).

11

Employer points out that Dr. McHugh noted that the July 2014 MRI indicated a "small partial tendinopathy," McHugh Dep., 7/23/15, at 11, and testified that Claimant stated that a prior doctor had "told him he had a rotator cuff pathology," *id.* at 7; *see id.*, Ex. 2. Employer posits that, by subsequently opining that Claimant had no shoulder pathology at the time of his examination, Dr. McHugh effectively concluded that Claimant had recovered from all work-related injuries, including the rotator cuff tear. We disagree.

While Employer urges this Court to interpret Dr. McHugh's opinion testimony as necessarily encompassing the partial right rotator cuff tear, we conclude that his testimony did not unequivocally establish Claimant's recovery from that particular injury. To be unequivocal, an employer's medical evidence must be "capable of being understood in only one way" and leave no room for doubt. *Chadwick v. Workmen's Comp. Appeal Bd. (Benjamin Franklin Hotel),* 573 A.2d 652, 655-56 (Pa. Cmwlth. 1990). Although Dr. McHugh referenced the "partial tendinopathy" notation in the July 2014 MRI report, that testimony was not adequate to support a finding that Dr. McHugh specifically acknowledged the existence of a partial rotator cuff tear and rendered an opinion as to whether Claimant fully recovered from that tear. Dr. McHugh's medical opinion regarding Claimant's recovery was clearly limited to the right shoulder strain. *See* McHugh Dep., 7/23/15, at 24-25; *id.* Ex. 2, at 6; *see also* Bd.'s Op., 1/17/19, at 5 ("Dr. McHugh only testified that Claimant was fully recovered from a right shoulder strain and made no mention of a rotator cuff tear."). Furthermore, the WCJ accepted the medical opinion of Dr. Murphy and specifically found that Claimant had sustained *two distinct* work-related injuries: a right shoulder strain *and* a partial right rotator cuff tear.

We conclude that, without recognizing the partial right rotator cuff tear as a work-related injury, Dr. McHugh's opinion testimony failed to establish that Claimant

12

fully recovered from that injury. *See Elberson*, 936 A.2d at 1199-1200; *see also Westmoreland Cty.*, 942 A.2d at 219 (finding a doctor's testimony legally insufficient to support a termination of benefits, because "although [the doctor] opined [that the c]laimant fully recovered from any low back injury sustained [in] the work incident, he did not accept [the c]laimant's herniated L4-5 disc or lumbar radiculopathy, which [the WCJ] deemed work-related"); *GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1092 (Pa. Cmwlth. 2001) (holding that because the employer's expert never acknowledged that the claimant suffered from the specific work injury identified in the NCP, the expert could not have found that the claimant fully recovered from that injury). Therefore, we agree with the Board that Dr. McHugh's testimony was incompetent to support the termination of Claimant's benefits.

## Conclusion

Because Dr. McHugh neither acknowledged Claimant's accepted work-related injury of a partial right rotator cuff tear nor opined that Claimant had fully recovered from that injury, Employer failed to satisfy its burden of proof on the Termination Petition. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Darby Borough,                          :
                    Petitioner          :
                                        :
            v.                          : No. 175 C.D. 2019
                                        :
Workers' Compensation Appeal            :
Board (Bevenour),                       :
                    Respondent          :

# **O R D E R**

AND NOW, this 26th day of November, 2019, the Order of the Workers' Compensation Appeal Board, dated January 17, 2019, is hereby AFFIRMED.


_____
ELLEN CEISLER, Judge